Case No. 2014-16-23, Kasey McDermott v. Nationwide Mutual Fire Insurance Funding, Production C, 15-25. Ms. Davis, would you come? Good morning. May it please the Court, I'm Jo Robin Davis, appearing on behalf of Ms. McDermott. And I would like to reserve five minutes of time. I've had a lot of problems with this case because, simply put, I don't understand the District Court's total indifference to the Michigan Innocent Coinsurer Doctrine. I can only presume, since we never had oral arguments on any of these motions from which these orders were derived, that the District Court was so mesmerized by the ex-husband, he's now a former husband's conduct, Brian Matthews' conduct, in... The conduct which she approved. No. She didn't know about the propane, but she knew that he was doing an illegal act. No, he was not. Yes, it's against the federal law to do that. It is, but we're following Michigan law. Yeah, but it's still against the law. Okay. She lives in the United States. Of course. We could know... I mean, and this is something way beyond this case, which is whether or not... But, you know, to just say she's innocent without understanding that she's presumed to know the law, that an illegal activity was taking place in her house, is disingenuous on your part, too. Well, the fact that he was distilling marijuana using butane, that's what caused this fire. Your argument is she knew he was doing something, but she didn't know the extent of what he was doing, therefore that excuses her? I don't think it excuses her. I think it creates a question of fact, and I'll tell you why. I take the testimony of the Deputy Sheriff, Deputy Sheriff Jeff Walpert, and this is part of the record, and he testified. Are you aware of any law in the state of Michigan that he violated? Answer, no, I am not. Question, was his conduct illegal? No, it was not. That's from page 41 of his deposition transcript. Under Michigan law as it exists, his conduct was legal. There are, you know, there's all these cases with medical marijuana providers and caregivers who I think now can get unemployment benefits, something like that. I'm not sure, but I really don't follow that because what I'm looking at here is a woman who's working a lot. She's working overtime. Let's assume it's just as legal as it can be. There's no question she knew they were conducting a business within her. He never even said it was a business. He said he hoped he made enough money at some point in time to turn this into a business. I'm sorry, he hoped he made enough money, what, selling the marijuana? Turning this into a business. No, he said he never sold it. What he said was that he gave it away or that he was able to recoup his costs associated with this. That's the law. A lot of businesses recoup their losses only by selling their product. You know, Your Honor, I'm not here to justify his conduct. I think his conduct was abhorrent. It's in your policy that you're excluded if you're running a business within your house. But that's not the basis for the denial. That's not what caused this fire. He's not running a business at his house. He is growing marijuana pursuant to a license given to him by the State of Michigan. Pursuant to the license, it presumes he's going to sell it or give it to somebody, right? Give it to people. He's a caregiver. I didn't write the statute. I think it's a crazy statute. You didn't write the policy. Well, no, but the policy doesn't say anything about it. That's not the issue. The issue is whether or not it's a business. And the issue is whether or not she's an innocent co-insured, which under the Michigan law has always been and will be the fact. Let me ask you in that regard, the Nationwide was obligated to pay off the mortgage, right? Only when they denied her claim, Nationwide was obligated to pay off the mortgage. Had they not denied her claim, they would have issued a check made payable to Ms. McDermott and Nationwide for the building portion of the loss so that she could rebuild under the terms of the policy. And she would have still had to pay her? She would have had to make her mortgage payments. Mortgage payments, right along. Correct. Okay, and so what they did here was they said, okay, you violated the policy, but we're obligated to pay Nationwide, and therefore we're coming after not the wrongdoer here, who is the husband insured, who the district court judge decided, you know, he based all of his decisions on Mr. Matthews' conduct. Let's not even look at her. He didn't look at her. He said that he increased the hazard, not that she increased the hazard. Pardon? The district court you're talking about. Correct. The district court said he increased the hazard, and therefore pursuant to a The insurance company argued various other bases for Denial. For denial. Correct. And that were argued below. Is that correct? They were not ever argued, but they were briefed. They were contended below. They were briefed. They were They were raised then. They were raised. As I understand it, and this is from page ID 44849, that there's like six or eight bases that the insurance company said were Correct. Sufficient, right? So you're not saying we're bound only to look at the ones that the district court relied upon? I don't think that that's the rule. I think you can look at the other ones. However, when I'm appealing Let me ask you about one of the other ones. Okay. What about the failure to comply? This is the failure to comply with the conditions, including failure to advise of change in the use of the residential premises to be Used as a marijuana, butane, honey oil, and THC manufacturing facility. Now, I can understand. I understand the argument that if one of your kids smokes a joint upstairs that you don't have to run and tell your insurance company. But at some point, doesn't that, just by the terms of the language of the policy, indicate that you need to notify them when you have a Manufacturing facility which she knew about? It's not a manufacturing facility. He's growing plants. It's not She's growing plants that He's growing plants that have Growing facility then. Okay. All right. He's got a growing facility that makes stuff that people use, not just to look at, but to inhale and get high. And he's using, and this she knew, cans and cans of stuff that had the word inflammable on it. She saw one can once. She never read them. Pardon? She only saw one can once. That's what she testified to. And she never read them. She did not know that butane was flammable. She knew nothing about butane. If somebody is butane in their house to fill a cigarette lighter, are they supposed to tell the insurance company? The reason that this becomes an issue of fact is the policy language provides coverage for dwelling on the resident's premises used mainly, And the word mainly is there, as the insured's private residence. The policy states, we cover the dwelling on the resident's premises used mainly as your private residence. The home was always used mainly as her private residence. He used two rooms in the basement to grow marijuana. The rest of the home was used as a private residence for Ms. McDermott, her children, and her now ex-husband. By virtue of the policy language, there was never any change in the usage of the home mainly. And if you look at all the policy, all the cases regarding occupancy, it talks about whether the home is occupied, owner-occupied, vacant, or unoccupied. That's the change in condition. Were they married at the time? Yes. Does tenancy by the entireties have any effect on this? And I'm just asking. Yeah, which is why the Borman decision is so interesting. Because in that particular case, you had a tenancy by the... No, actually, it's not Borman, it's Williams. Borman was a grandmother, an innocent grandmother, whose grandson arsoned the home. Yeah, that wouldn't be tenancy by the... The Auto Club Group Insurance Company, which is exactly on point in this case, where the policy said uninsured, and the court said you can't use uninsured, you have to use what's in the standard policy, which is de-insured, which evinces the legislature's intent to protect innocent co-insureds. In Williams, it was a tenancy by the entirety. In Morgan v. Cincinnati, it was a tenancy by the entirety. And the court said that we are not going to make the... In Morgan, it was the husband, I think, set fire to the house. We're not going to make the wife responsible for the actions of the husband, despite the fact that there's a tenancy by the entirety, a joint tenancy by the entirety. So the Michigan Supreme Court has addressed those issues and has said that it really doesn't apply to make her responsible for his conduct. And with respect to these cases, I mean, it's clearly clear, looking at the case, the issues that the judge did address, that the policy language with respect to the increased hazard is void. Just that particular portion is void because it does not comply with the 165 lines which the Michigan courts have held, and it's been addressed by remand in the Supreme Court, that it's got to comply with the 165 lines, and it doesn't. It says it has the wrong language. And the court said, well, I have to follow the language of the case, the language of the policy. But if you're only following the language of the policy and not looking to the statutorily mandated provisions, you can't do that. So therefore, you have a situation where he's following something that he just can't, you can't do it because Michigan has the innocent co-insured doctrine, which applies, and I think I'm out of time. Yes. Your Honors, may it please the Court, Michael Schmidt for Nationwide. As the Court pointed out, we raised five different bases for summary judgment. The Court ran it on two. Our briefs, we argued throughout our briefs, we concentrated on Ms. McDermott. We didn't concentrate on Matthews. McDermott was the named insured. She owned the house. We had to establish that she was involved in each one of these defenses, and we did. And the Court chose to rule on two of them, but we had all five. In my brief, it's well settled that the Court can affirm on alternative grounds without having to file a cross-appeal. That's, of course, true. One of them was this business about notice of change in the circumstances? Yes. Can you address that, please? Yes. Nationwide didn't even know she was married to Mr. Matthews. But you don't have to notify who you're married to under the policy, do you? You do have to notify what? What does the policy say about notice that's required? It says you have to, I'll get to the point right here. The policy says that the insured has to notify the insurer as soon as possible of any change which may affect the premium risk, which includes, but not limited to, changes in the occupancy or use of the resident's premises. So when Nationwide issued this policy... She says that just applies to primary use. Is that wrong? I don't see the word primary. It's not in there. The cases she cited were, it says, of any change which may affect the premium risk, which includes, not limited to, changes in occupancy or use. When Nationwide issued the policy in 2005, they sent an agent out to look at the house, and the affidavit was attached to our motion. And the agent reviewed it, and he said, did not have a business occupancy, and the dwelling was free from, and the policy was free from above-average exposure, and there were no property conditions that increased the chance of injury or illness to others. Does this make an insured sort of have to know something about the insurance business in order to know what to report? I mean, an insured might not know what's going to increase the risk. Unless you assume everything would increase the risk, like inviting your kids' friends over for a party or something. Well, that's not what happened here. I understand, but I'm saying how is the insured supposed to know whether to comply with this provision of the policy? Under the Michigan law, the insured has a duty to read their policy. If they don't read it, they're held to a record. I understand. They read it, and it says increase the risk, and they don't know anything about what risk is. If everything increases the risk, it can't be that. So how do they know where to draw the line? Well, and then it's what would a reasonable person do? Then it says that if the Michigan law says if the insured reads the policy and has a question, they have a duty to raise that question with the insured in a reasonable time. So if she read that and she thought, well, this Breen, he just brought in $20,000 of lights, and he's running this marijuana processing facility in our basement and whatever, I'd better check with the insurance company. I'm not sure. Should I check with the insurance company? I think I'd better check with the insurance company. Is it clear that she knew that, that he brought in $20,000 worth of lights? Yes, and I'll tell you briefly, this is what she knew. Number one, this is her testimony, undisputed, her testimony. She knew he was running a marijuana business in the basement and garage. She knew that that was his full-time employment. She knew he was working on it eight hours a day. She knew he had customers. She knew he was making profits because their net income was $1,000 short a month of what they were spending. This guy was making way more than that, but he didn't keep books and records because he violates federal law. He has no tax returns, no business records, nothing. That's a different issue. She allowed him to run it in the basement. She had two kids, her children, ages 12 and 15. Despite that, she's got, and it's documented by the investigation and the photos that are attached to the motion, there's piles of loose marijuana in the garage. You can see them on top of boxes. There's two boxes of butane cans in the garage. There's a wheelbarrow full of butane in the garage. She says that there's only one can that she's testified that she's seen. You say there's boxes. I can go look, but it seems like the two of you could get the story closer than two boxes versus one can. Your Honor, it's in the brief. It's in the motion. It's in the photos that are attached. There's the photos showing boxes. Then you go in the basement. There's butane cans all over the basement. There's marijuana plants all over the basement. Then we have the investigation. We know that she went in the basement? Yes, she did her laundry in the basement. The investigator, Bay County Sheriff Wolpert, he investigated this, and he's got piles of marijuana in the garage. I've got marijuana plants and materials all over the basement. I've got butane cans all over the basement and in the garage. He says his investigation showed Matthews was running his marijuana facility in the entire basement, and he said it's the most extensive. Your point is there might be some line between what they have to report, but this is clearly over the line. Is that the idea? This is so far past the line, Your Honor, it's ridiculous. This is absurd. Wolpert said this is the most elaborate marijuana facility he'd ever seen, and he's in charge of the whole county. So that's her knowledge as to that. The only thing that McDermott might be innocent of, she wasn't there when this Matthews is stuffing the marijuana and shooting four 24-ounce cans of butane through it. She wasn't there then, but she knew he was running the operation in the basement, and that's enough on the fair to provide notice of occupancy or use. It's also, if we talk about the increased hazard exclusion, Do you know that that would increase the risk if all you know is that it's a business but you don't know that it's a dangerous business? It's increasing. The policy says that if you increase the hazard or risk, there's an exclusion. That's a different provision. I'm talking about the change in the use of the residence prop. You don't have to. It's not on premises such that it increases the risk. That's the standard, right? That's what you read to me. Notify the insurer as soon as possible any change which may affect the premium risk, which includes but not limited to a change in occupancy or use. So the question is, was there a change? I'm just trying to understand her argument and your argument. Her argument is the use means the primary use, and the primary use wasn't changed, and it doesn't affect the risk because I didn't know that it was explosive. I thought it was just growing plants. No, that's not it, Your Honor. That's another step further. Just having a marijuana facility in the house. Forget the butane. Raising marijuana plants, having marijuana all over the house, that's a change in your occupancy. Why? That attracts criminal activity. Somebody wanted to come in and rob some. Far from criminal activity. Pardon me? Far from criminal activity. No, I'm saying not by Matthews and McDermott, some outsider. That guy makes dope in the house. Let's go rob that house tonight. Okay? Customers coming in. Can I buy some dope from you? That's all increasing the risk. And that's why Nationwide goes out there and says, if Nationwide went out there, it's in the affidavit, if Nationwide knew that they had that going on, they never would have insured it. They would have canceled it immediately. And McDermott's whole defense was, this is no different than if I had a house plant, or it's no different of a change if I just left for work for the day. And I asked her at her deposition, I said, this is a change, isn't it? A change in the use of the basement? Well, we changed our dining room from a dining room to a partial office. To me, that would not be something I would need to notify my insurance about. My question, I'm talking about the change in using a basement from a basement that is simply for storage and washer and dryer to another where someone's manufacturing and processing marijuana. That is a change in use, isn't it? Answer, it was a change, yes. That's after going through for six pages. Well, it's just like I had a house plant. That's not what it was. And the next issue was increased hazard. This marijuana facility increased the hazard, and if there's an increase in hazard, then it's excluded. And it definitely was a new use, a different use. They're using it for a marijuana facility. It used to be a basement with storage and a washer and dryer. Now we should run it in a marijuana facility down there. And all it requires for McDermott is knowledge or control. It's undisputed she had knowledge of the marijuana in the basement. She didn't have the knowledge of the butane, knowledge of the marijuana, but she did have knowledge of the butane also. And control. She had control because both Matthews and McDermott testified she was the one in charge, and if she said turn it off, you've got to turn it off. But the other important point is that in her mortgage, which was produced, there is a provision in there that says she has a duty to assure that there's no hazardous substances on the premises. And it defines hazardous substances as those defined by the Federal Hazardous Substances Act. So she not only had, she can't say, she feigns ignorance in the case and says, gee, I don't know what butane is. Well, that's ridiculous. The investigation shows butane cans all over the garage, all over the basement. She's in the basement. She says, well, I saw him with a can in the basement, and she admitted, I knew he must have been using butane in this operation. Well, the mortgage requires her to not permit that. So she's got to go down, she's got to investigate her house to make sure there's no hazardous substances in there. That's right in her mortgage, and it's quoted in my brief. She can't say I didn't know about it. She had a duty to know about it. So A, she had control. B, she had knowledge. So she also has no coverage on the increased hazardous exclusion. Then we have the argument that it's not an accident, and for that situation, the Frankie Mutham versus Masters case, that's the case where a father and son said, let's just do some smoke damage to our business. Well, things got a little out of control, and it burned the business and some neighboring businesses, and the Michigan Supreme Court says when you do an intentional act and it creates a direct risk of harm, there's no coverage for resulting damage or injury despite the lack of intent to damage or injure. It's irrelevant whether the damage or whether the harm was different from what or exceeded from what was intended. Well, here, what's the intentional act? They were intentionally running the marijuana facility in the basement, and secondly, that created a direct risk of harm. So therefore, it's not an accident, and that's from McDermott's standpoint. We don't have to show she was there trying to smoke some of this honey oil before it's even evaporated. All we have to show is she knew that was in the basement, and it created a direct risk of harm. And there's a Michigan Court of Appeals case. It's Allstate v. JJM, 254 Misha, 418. That case, an adult gave a minor some alcohol intentionally. The minor went out and raped another minor at their house that they were having a party. The Michigan Court of Appeals said the intentional act is giving the alcohol, and that creates a direct risk of harm because you know minors aren't supposed to have that. Well, that's exactly what we have here. You have this marijuana facility in the basement that's intentionally created, and you're not supposed to have it there. We also have the defense of the wrongful conduct rule. As the court noted, what they were doing was illegal under federal law, and it also was something that she knew about. And under the federal law, you can have conspiracy, and therefore if she may not have been doing exactly what Matthew was doing, she knew about it. Therefore, they're both committing an illegal act. As far as Nationwide's claim for reimbursement, first of all, Nationwide paid her $5,000 right away. She signed off and said, if you deny coverage, I've got to pay this back. Then the second part was there was about $2,900 that Nationwide paid before it knew the cause of the loss, and that was paid by mistake. Nationwide never would have paid that. As soon as Nationwide found out about the cause of this, they said, we're denying coverage. But then we have the point where Nationwide has this loss payee clause where it's a standard clause, which means they have to pay the mortgagee. They have to pay them. There's no defense of the insurer's defense of the mortgagee. But that includes the subrogation provision. If they do pay the mortgagee, they're subrogated to go against the insured. Otherwise, the insured gets a windfall. They can do the most non-covered event possible, and they get their mortgage paid off. That's why they have subrogation. Nationwide's allowed to have a full assignment and to recover from McDermott. And what's interesting about it is when Nationwide did pay that off, it was miscalculated by several thousand dollars, and the bank sent McDermott $2,600 back, and she didn't tell Nationwide she got a freebie. I think that sort of reflects on her overall bad faith in the entire incident. Does the court have any questions at all? Apparently not. I'd ask that you please affirm the trial court. Thank you. Thank you. First of all, you have a woman who's working overtime as a comptroller trying to pay for her home, pay for her house, pay for her kids. Her husband is a ne'er-do-well. He can't keep a business. He runs two businesses into the ground, and he comes up with this medical marijuana thing. She's busy. She's working. She's taking care of her family. And he's allegedly downstairs growing pot in two rooms that are locked. She never goes in there, and that's her testimony. She will talk to her husband from the doorway. She wants nothing to do with this, but this is what he's doing in order to do something. Does she do the laundry? She does the laundry downstairs but not in those two rooms. Those two rooms are separated, and that's what the Michigan Medical Marijuana Act provides. It has to be like in separate rooms. There is no testimony and there is no evidence that any of this conduct is illegal. There is none. Whether it is or isn't under federal law is a different story, but there's no testimony that anything is illegal. Now, the issue with respect to accident is not an issue, and Nationwide even acknowledges that in its appellate brief on page 28. It says Nationwide had to raise arguments eliminating coverage for both, that would be Matthews and McDermott. And I'm quoting, the, in quotes, accidental, end quotes of theirs, requirement applies to Matthew, who is admittedly not an innocent co-insured and whose intentional acts directly caused the fire. It doesn't apply to McDermott. All of the cases that have been cited by Nationwide are cases having to do with third-party tort liability, which are not subject, that portion of the policy, those requirements for accidental loss, are not subject to the mandated strictures of MCL 500.2832. When does a mortgage company have to give back the money we hold for you? No, no, the mortgage company gets the money. So you get a house built with no mortgage on it? Well, you don't get a house built. Because the, well, but the money she gets is primarily for her contents because the house money that she would have used to build, rebuild the house, has been given to the mortgage company, so she doesn't get that. Well, that's what I asked, and you said, yeah. Well, no, the mortgage company doesn't have to give back the money. The mortgage company gets the money. She can get a new mortgage, presumably, if she builds a new house. Correct, correct. She can go and apply for a new mortgage, but she doesn't get the money that would have been given to her had they followed the innocent co-insured doctrine. She would have had to pay the bank if it hadn't been for the insurance paying it, though, right? Well, she would have continued. She would still have owed the money. What happens is she would still owe the money. She gets money back from the insurance company. She rebuilds her house. The mortgage company watches as the house is rebuilt, and it's usually a draw of a third, a third, and a third, and she basically continues to make her mortgage payments. If your mortgage is paid off, then you don't have to pay it. No, at that point, no. Generally speaking, when the insurance company pays the mortgage off, then you don't have to pay it anymore. Of course, right. Then if the insurance company wrongly paid it off, then . . .  She doesn't get credit for that money. Even if the mortgage company is wrongly paid off, they're paid off. It's her debt. So, therefore, she gets credit for that debt. Or she doesn't have to pay that. Right, right. And if she's in the wrong, in some sense, she should have to pay that. Not that she is in the wrong, but just hypothetically speaking, if you're not covered and it mistakenly goes and the mortgage is paid off, and you didn't have a policy, for instance, it was all a mistake, then to bring it back to equality, she should have to pay back, right? Well, that's what the policy says. Usually what happens is the mortgage company has a separate contract with the insurance company. That's what the policy says. That's what this policy says. But it says it to the insured. You would think it would be the insured who's guilty of the bad conduct. And I have to get back to that. That goes to all the other issues. That goes to the other issues. And that's . . . That's why I'm having trouble seeing how if you lose on the other issues, you win on this issue. Your issue with respect to the subrogation depends on whether you win on the other. I think that, honestly, if she loses on these issues and the court doesn't determine these are questions of fact for a trier of fact, then she loses on the other. Thank you. I think that's probably the point. But I think also you have to really look at this innocent co-insured doctrine because under that doctrine, the prior fact has to decide all of these issues, including the use in occupancy. Thank you. Thank you. Please just submit it. And when you've read it, you may call the next case.